IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| Winston A. Ritter<br>    Plaintiff<br><br>v.<br><br>Ray Hunt, Paul Rees, Melissa Scharf, Stephany Posha, Daniel Woydick, Dean Chapel, Jodi Cozby, Amanda Womack, and Alisha Hanna,<br>    Defendants | CV-24-87-H-DLC<br><br>AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |

## I. Introduction

1. This is a 1983 filed by Plaintiff Winston A. Ritter, a state prisoner, alleging violation of his constitutional rights to receive medical care, injunction, and damages pursuant to the Americans with Disability Act and the Rehabilitation Act.

## II. Jurisdiction

2. Jurisdiction of this court is invoked pursuant to 28 U.S.C. 1343 (a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights of persons within the jurisdiction of the United States.

3. Jurisdiction of this court is invoked pursuant to 28 U.S.C. 1331 in that this is a civil action arising under the Constitution of the United States.

## III. Parties

4. Defendant Ray Hunt is a Registered Dietician (RD) and a Registered Nurse (RN) employed by Montana State Prison (MSP) through Montana Department of Corrections (MDOC).

5. Defendant Paul Rees is a Physician (PHY)a and the Medical Director employed by MSP through MDOC.

6. Defendant Melissa Scharf is an RN and the Assistant Medical Director employed by MSP through MDOC.

7. Defendant Daniel Woydick is a Medical Doctor (MD) employed by MSP through MDOC.

8. Defendant Stephany Posha is an RN and a Supervisor for Special Needs employed by MSP through MDOC.

9. Defendant Dean Chapel is a Physicians Assistant (PA) employed by MSP through MDOC.

10. Defendant Jodi Cozby is a Nurse Practitioner (NP) employed by MSP through MDOC.

11. Defendant Amanda Womack is a NP employed by MSP through MDOC,

12. Defendant Alisha Hannah is an RN employed by MSP through MDOC.

## IV. Facts

13. On 02/14/24 Plaintiff arrived at MSP where Plaintiff informed the intake nurse, Shanna Cross, that he suffered from Crohns Disease and a permanent colostomy, stressing that any complications from the Crohns Disease could be avoided by adhering to a dies taht had been followed by the Plaintiff since 2005; ShannaCCross RN relayed that this information would need to be communicated to the Provider.

14. On 02/15/24 Plaintiff saw Amanda Womack NP reulting in her stating she would speak to Ray Hunt RDRN about the Plaintiffs diet concerns.

15. On 2/21/24 Plaintiff was seen again by Amanda Womack NP regarding severe abdonminal pain, blood clots in Colostomy, and blood in vomit and since Plaintiff was already onPPrednisone taper from county jail, nothing was done at this time and Plaintiff was sent back to his cell.

16. On 2/22/24 the Plaintiff suffered a Crohns Disease Flare-up that was bad enough that he was sent to Deer Lodge Medical Center (DLMC) in the Emergency Room where itwwas thought a bowel obstruction might be the diagnosis. After a CT Scan it was determined part of the intestines was inflamed, I.E. the Flare-up, and was subsequently released with instructions to do a taper from a high dose of Prednisone, however this recommendation was never followed by the Infirmary Staff Providers at MSP.

17. On 02/23/24, at MDIU (intake unit), Unit Manager Bouley asked that the Plaintiff writeean Informal Grievance regarding the diet, or lack thereof, to see if heecould get somethinggdone to help his physical suffering from not having proper food. Informal was written and submitted.

18. Onn02/23/24 a kite (communication form) was sent to Lisa Wirth, the Grievance Coordinator, as well as the Americans with Disability Act (ADA) Coordinator, asking for an accomidation for a special diet for Crohns Disease as the Plaintiff was awarded Social Security Disability from the Social Security Administration (SSA). This was subsequently denied.

19. On 02/20/24 the Plaintiff received a kite from Ray Hunt RDRN explaining that he would not be giving hima special diet, but he would give him education on what to eat and what to avoid of the regular trays, outlining what should be eaten and what should be avoided. This declaration was Ray Hunt stating essentially that if this sorting of food was to occur off of a regular

a regular tray then the Plaintiff would be getting less food than every other prisoner in the compound.

20. On 02/23/24 a kite was written by Ray Hunt reinterating his previous statement but wasn't received by Plaintiff until 4/03/24.

21. On 02/26/24 Paul Rees PHY ordered a High Protein, Low Carb diet after searching through all diets offered at MSP. Despite Plaintiffs justifications for low fiber, which would be closest to his outlined diet (see attached), it was denied. The Plaintiff let Paul Rees PHY know that the vegetables and fruits, among other foods, would still cause irreperable harm, emphasizing how wrong the diet was. Rees would not budge, telling Plaintiff to take concerns to the dietician.

22. On 02/26/24 a diet of High Protein, Low Carb was started in which the Plaintiff would get one ounce container to supplement each meal; this Peanut Butter that was in the 2oz. containers was melted and poured out like oil, rendering it inedible and a waist of time. It would remain like this until the diet was abruptly in mid-March.

23. 02/27/24 the Plaintiff wrote a kite complaining about three black stools (dry blood) and stomach pain.

24. On 02/28/24 the Plaintiff saw Daniel Woydick, however nothing was done about the black stools. Instead the Plaintiff was prescribed Oxcarbazepine, 150mg, twice a day for 180 days.

25. On 03/07/24 a kite was returned without an answer that was for Ray Hunt. To date, per Amanda Womack NP, Paul Rees PHY, and Daniel Woydick MD, the Plaintiff was told repeatedly to speak to Ray Hunt regarding the nuances of said diet. This kite was written not just to define the diet, but offer some history of Plaintiffs medical experiences and complications that arose over the last two decades.

26. On 03/07/24 the Plaintiff write a kite asking medical for a Low Fiber diet given all the medical issues to date. This consession was offered given the fight over the diet for what was three weeks. This diet would've been the closest to what the Plaintiff was looking for.

27. Yet another kite was sent to medical on 03/10/24 and on 03/11/24 Plaintiff saw Paul Reese PHY where a shot of Odansetron was administered per Rees and Amanda Womack, for nausea.

28. On 03/12/24 the diet for High Protein, Low Carb had abruptly stopped

29. On 03/17/24 Plaintiff wrote medical a kite stating he was throwing up all day, stomach pain, and felt weak and tired.

30. On 03/18/24 Paul Rees PHY gave Plaintiff 8mg of Odansetron, or Zofran, three times a day for seven days.

31. On 03/19/24 Melissa Scharf RN, Assistant Medical Director (AMD), used Alisha Hanna RN (per Hanna's admittance) as a conduit to directly threaten the Plaintiff by saying, "If you continue to contact medical you will be written up for impeding staff." Correctional Officer _____ Maker was with Alisha

3

Alisha Hanna when she made this threat during PM pill pass. She ended by stating, "And that's straight from Melissa Scharf." An Informal Grievance was written about this issue.

32. On 04/05/24 Plaintiff had another flare-up for his Crohns Disease, however he wasn't seen by any provider, but was prescribed Prednisone.

33. On 04/06/24 Plaintiff wrote an Informal Grievance about not having proper diet and how lack of proper diet gives Plaintiff choice of food that will cause irreperable harm or going hungry.

34. On 04/11/24 Plaintiff wrote kite to medical informing them of extreme pain in the intestines, the stoma (for colostomy) was red, swollen, and also in pain.

35. On 04/13/24 Plaintiff wrote kite to medical stating that in the night colostomy bag was emptied twice with blood in stool.

36. On 04/14/24 Plaintiff was seen in infirmary by Dean Chapel MD. Nothing was done at this time and Plaintiff was sent back to cell.

37. On 04/19/24 Plaintiff sent a medical kite asking staff to do a basic google search for raw carrots, broccoli, cauliflower, and lima beans (as these items were being served to Plaintiff in the High Protein, Low Carb) diet) to attempt to gain information about whether or not they were digestable for someone with Crohns Disease. Once again, Plaintiff was deferred to dietary.

39. On 04/22/24 Plaintiff sent a kite to Special Needs (part of medical) complaining about Ray Hunts apparent indifference and retaliation. Everytime he was asked by Plaintiff, through Kites, to modify his diet in any way, the amount of vegetables and beans would increase in amount - the two major things Plaintiff can't digest. Plaintiff was getting no fruit, bread or pasta, cereal, or desserts (cinnamon rolls, cookies, pie, fruit crisp, pudding, icecream). Ray Hunt was making the diet as undersirable as humanly possible. Plaintiff stressed that the dietician was doing the opposite of his requests. The response by Stephany Posha RN, Special Needs Supervison, was: "Your diet has been modified to a Low Carb, High Protein diet. What food wervice chooses to serve you, that fits that order, is not medicals decision."

40. On 04/26/24 Plaintiff wrote a grievance asking for ADA Coordinator for ADA Accomidation with a diet for Crohns Disease. No response was given for two and a half months and was denied. Then when appeal went to warden level it was granted in part because of an active High Protein, Low Carb diet, however no changes to diet was made. It remained a diet Plaintiff did not need, had been arguing against, yet was ignored regarding it.

41. On 04/26/24 Plaintiff wrote an Informal Grievance detailing what he got for his three meals earlier in the day. For breakfast it was Sauerkraut, green beans, and tuna with cheese. For Lunch it was black olives, green beans, salad, and two boiled eggs. For Dinner it was broccoli, cauliflower, carrots, sauerkraut, and tuna and cheese. The pursose of this was to expose the ratios, or percentages, of undigestable foods that cause irreperable harm versus what was edible. The tuna, cheese, and boiled eggs were all that were edible/digestable. This was all Ray Hunts design as he

controlled the menu. Those totals were 62% of the tray being undigestable and the remainder accounted for 38%. Plaintiff was attempting to appeal to anyone that would take notice regarding his diet and how far off it was from protecting from complications per his Crohns Disease. Unfortunately nothing changed. Kim Malcolm, Food Service Manager, answered the Informal Grievance and marked granted, thereby stopping any higher level Grievances. Ray Hunt RDRN wouldn't budge.

40. On 05/03/24 Plaintiff wrote a kite stating, "...fiberous foods won't break down..." This effort too was ignored.

43. On 05/07/24 Plaintiff wrote kite to medical complaining about nausea for past five days. Plaintiff relayed he'd thrown up a few times, and also explained that he's been avoiding eating because of feeling.

44. On 05/07/24 Plaintiff wrote to Paul Rees PHY about how attempts to communicate with Ray Hunt, in any capacity, had failed to date. Plaintiff mentioned apparent retaliation. Also mentioned that Ray Hunt had cancelled diet.

45. On 05/07/24 Plaintiff wrote a Grievance regarding how he was prescribed Predisone, given a taper from 50 mg to 0mg. From 02/14/24 to 05/07/24 there was no more than a week to two weeks that Plaintiff hadn't taken Prednisone and suddenly he was taking it again. That would've been approximately 70 out of 84 days he had been taking Prednisone. These facts, and the complaint, prompted the medical visit with Dean Chapel (referenced in Grievance as Chaplain). The exam consisted of a stethescope placed once on the center of the upper back, once on the top of the center of chest, on t top of the shirt and was over. Apparently this was sufficient enough to constitute a prescription for Prednisone with no change to diet. Two days later this Grievance was returned as "not processed." The reasoning was that the informal was granted and the exam was sufficient.

46. On 05/07/24 Ray Hunt cancelled the High Protein, Low Carb diet citing "Non-Compliance." On several occasions, including this date, a brown paper bag was absent, that contained Plaintiff's meal, from where the other diet sat in the cafeteria. When the bag couldn't be located Plaintiff was allowed to take regular tray so he wouldn't go without a meal. Ray Hunt claimed this action sufficed as Non-Compliance and used it to justify his decision. Plaintiff viewed this as more retaliation.

47. On 05/10/24 Kim Malcom FSM, responded to a kite written on 5/8/24 regarding Plaintiffs request to google search certain food to see if they were appropriate for someone with Crohns Disease. A couple of these items were cabbage (sauerkraut and in salads) and cauliflower. Since broccoli was like cauliflower, Plaintiff viewed cauliflower and broccoli as same. This was a step in the right direction as her research stated these two vegetables should be avoided by those with Crohns Disease. It turned out however, to the present (December of 2024) that this would be the only effort ever made by any staff member, in anyway, to attempt to find out what foods Plaintiff would be recommended to avoid as it pertains to Crohns Disease.

48. On 05/13/24 a kite was sent to medical regarding Plaintiffs frustration about going in circles from medical to dietary, and back again, emphasizing how neither were willing to help fix the diet. The response to this was, "No Medical need noted."

49. On 05/17/24 Plaintiff wrote kite to Stephany Posha RN, Special Needs Supervisor, begging to have a conversation about his diet, Ray Hunt, etc.

50. On 05/24/24 Plaintiff wrote kite to medical complaining about being in pain, and vomiting food and medications.

51. On 06/02/24 Plaintiff wrote digital kite to medical about vomiting breakfast outside the cafeteria and still not seeing a provider since previous kite on 5/24/24 for same thing.

52. On 06/03/24 Plaintiff write another kite, digitally, about still not seeing provider. Finally was called in and Plaintiff saw Paul Rees PHY, however nothing was done at this time, despite complaints that arms and chest would hurt when vomiting.

53. On 06/20/24 Plaintiff wrote a digital kite to medical regarding severe pain in lower belly, on the right side of mid to lower back, and in chest. He was feeling all this despite the Prednisone he was taking and the supplemental Tylenol. Plaintiff pointed out he'd been complaining of this for a month and was worried about the implecations. He also pointed out he had a kite over two weeks old about the same issue with nausea.

54. Finally on 06/21/24 Plaintiff was seen by Jodi Cozby NP, however at that time nothing had changed and he was sent back to his cell.

55. Late 06/21/24 Plaintiff wrote a digital kite stating he had abruptly awoken throwing up blood and food. There was also blood in colostomy bag.

56. On 06/22/24 Plaintiff saw nurse and was scheduled to see provider.

57. On 06/24/24 Plaintiff wrote a digital kite to medical about bloody stools and bloody vomit, as well as black stools. Plaintiff expressed the pain was almost debilitating, that it brought him to tears and down to his knees.

58. On 06/25/24 Plaintiff saw Amanda Womack NP in medical where he was prescribed Odansetron for four days, doing nothing about the pain.

59. On 06/28/24 Plaintiff went to medical to see Paul Rees PHY. No more nausea medication was prescribed despite Odansetron running out. He was given a Cyanocobalamin shot at 1000 mcg and sent back to his cell. This was also the first day of taking Amjevita, a biologic, at 160mg injection.

60. Sometime between July and August Plaintiff went to Missoula, MT to see a PA that was working under a Gastrointerologist (GI). This PA had no records pertaining to Plaintiffs Crohns Disease at all nor made any effort during consultation to obtain them. She stated she thought Plaintiff needed to take a biologic called Humera, or more popularly referred to as Amjevita. Plaintiff asked how she would make such a recommendation with no medical history, to base the treatment on. The PA exclaimed she had enough information from speaking to the doctor at the prison (of whom later would be found to be Paul Rees PHY). This conversation lasted less than five minutes.

61. On 07/04/24 Plaintiff wrote kite about stomach pain, complaining about it being so bad

it being so bad he was doubling over.

62. On 07/11/24 Plaintiff wrote medical a kite stating that he was throwing up blood, and chest was hurting from vomiting, as well as from the dry heaving. Plaintiff also mentioned how difficult it was to eat for fear of vomiting again.

63. On 07/12/24 Plaintiff saw provider Paul Rees Phy and was prescribed lomotil, nothing for pain, nor anything for nausea.

64. On 07/18/24 Plaintiff saw provider Daniel Woydick MD for Chronic care. Plaintiff had a hard time communicating with provider as he shut Plaintiff down each time he correlated his physical problems with the wrong diet. Daniel Woydick MD eventually pushed Plaintiff out of consultation given his relentlessness about having the wrong diet. He felt it was causing all his problems. This meeting lasted less than two minutes.

65. On 07/19/24 Plaintiff wrote kite to medical that he had thrown up what looked like, smelt like, and tasted like feces.

66. On 07/19/24 Plaintiff sent a digital kite regarding having black stoold for three days.

67. On 07/21/24 Plaintiff wrote a kite to Stephany Posha RN explaining attempts to speak to Ray Hunt and Paul Rees regarding his diet and all its nuances to no avail. Her response was, "Please choose foods from the diet provided." There were two other kites sent to Stephany Posha, one on 8/26 and another on 8/28, so on 10/10/24 all three were returned with the above statement. There was no diet of any sort on 10/10/24 so it appears she didn't read these communications at all.

68. On 07/26/24 Plaintiff was hospitalized at Deer Lodge Medical Center, Emergency Center for a bowel obstruction. He was kept until late morning on the 27th. Doctor Vaughn Thad Johnson was the caring doctor.

69. There are a plethora of kites to medical between 08/2024 to 12/2024 that carry the same pattern as all the ones listed so far. These are only being omitted at this time to save redundancy. Will produce documents upon demand at any time if needed, or can amend complaint if necessary. These kites talk about nausea, pain, vomit, bloody vomit, and black stools.

70. On 09/27/24, or about, Plaintiff received letter from Jodie Wells MCRN stating, "Your Grievance was denied." This was a response from the Director Level appeal and it exhausted all administrative options for the Grievance process.

71. On 09/29/24 Alisha Hanna RN yelled and cussed at Plaintiff when he came to Infirmary for help because he was bleeding from the scrotum. Plaintiff had surgery not long before this incident. Alisha Hanna chose to be confrontational with no provication. Blood was soaking through a jockey support, underwear, pants, and showing up on any seat he sat upon. This woman told the Plaintiff to return to the Unit and did so without any help or supplies for the bleeding.

72. On, or about, 10/01/24 Melissa Scharf RN Assistant Medical Director,

7

and Stephany Posha RN Special Needs Supervisor, altered the Medical Policy. The providers were no longer able to issue special diets and all diets would go through Ray Hunt. This was told to Plaintiff by a Provider during a consultation on, or about, 11/07 or 11/14.

73. On 10/03/24 at approxiamately 3:40pm at the Infirmary, Daniel Woydick MD had a consultation with Plaintiff. Very quickly Daniel Woydick got aggressive exclaiming he was "tired of this," referring to the many complaints and provider visits. In less than 90 seconds he was directing the Plaintiff out of the room, having the guard that was present assist. Just before leaving Plaintiff asked, "what is the problem?" His response was, "Now its a write-up." Plaintiff left and no write-up was ever given for this encounter.

Alisha Hanna
74. On 09/29/24 Alisha Hanna exceeded her authority by banning Plaintiff from yard, gym, and his job of pushing a wheelchair, through a medical lay-in. This was discovered 10/04/24. Thjs was done because of the complaint about the blood. This action was thenchanged from Alisha Hanna making the order to her supervisor Melissa Scharf RN making the order.

75. On 11/06/24 Plaintiff went through Grievance process to see a GI doc. On this day a letter was received from Director level stating that action was granted.

76. On 11/12/24 Surgeon Garret Harlan Taylor MD at St. James Healthcare in Butte, MT performed a colonoscopy. He began in the colon, or at the stoma in the colostomy. He had to abort the colonoscopy when he reached the terminal ileum as it was inflammed to such a degree the scope would not pass through. It was discovered there was mural thickening of the col colon. The doctor could not advance the scope through the stricture into the terminal ileium. (see attached paperwork). Postoperative diagnosis was Chrons ileitis with small bowel stricture, possible Crohns colitis. Garret Taylor MD recommended removal of stricture in damaged ileium and recommended low fiber diet per Plaintiffs request.

77. On 11/21/24 Plaintiff wrote an Emergency Grievance after having a colonoscopy done. Part of the Grievance was granted and Plaintiff was placed on Low Fiber diet, however the pleas for the rest of the diet to be fixed given his Crohns Disease was denied.

78. On 11/21/24 Trecia Campbell, at the directors level for Grievances, used the newly obtained Low Fiber Diet as her excuse to partially grant the grievance that had also reached the level for the second time regarding Plaintiffs diet. This would wind up being the second time his diet for Crohns Disease would be denied.

8

## V. Claims For Relief &
Deliberate Indifference

79. The refusal of Defendant Paul Reese PHY, Medical Director, under color of state law, to answer the Plaintiffs pleas to help after all the instances of vomiting blood, having [red blood] and black (dry) blood in colostomy bag, experiencing bouts of extreme and debilitating pain, acted with malice by refusing for over 9 months to provide a proper diet to these symptoms mentioned herein, or to order a special diet designed to prevent irreperable harm and/or exacerbate Plaintiff's Crohns Disease by damaging the terminal ileum, located in the small bowel, irreperably, to such a degree that the pain is constant through all activities, including, but not limited to, eating, walking, standing, sitting, and must now be removed, inflicting physical, emotional, and mental pain, failing to investigate at all to make informed decisions about Crohns Disease and the different diets available as it pertains to what ailments patient (plaintiff) has, for making this poor medical judgement so bad that it falls below professional medical standards, thereby constituting Deliberate Indifference to a serious medical need of the Plaintiff, violating the clause under the Eighth Amendment of cruel and unusual punishment, a deprivation of federal right.

80. The refusal of Defendant Ray Hunt RDRN, under color of state law, to answer the Plaintiffs pleas to help after all the instances of vomiting blood, having undigested food showing up in colostomy, experiencing bouts of extreme debilitating pain, acted with malice by refusing for nine months to provide a proper diet to respond to these symptoms mentioned herein, or to order a special diet designed to prevent irreperable harm and/or exacerbate Plaintiffs Crohns Disease by damaging the terminal ileum, located in the small bowel, irreperable, to such a degree that the pain is constant through all activities, including eating, and must now be removed, inflicting physical, emotional, and mental pain, failing to investigate at all to make informed decisions about Crohns Disease and the different diets available as it pertains to what ailments patient (plaintiff) has, for making this poor medical judgement so bad that it falls below professional medical standards, thereby constituting Deliberate Indifference to a serious medical need of the Plaintiff, violating the clause of the Eigth Amendment of cruel and unusual punishment, a deprivation of federal rights,

81. The refusal of Defendant Melissa Scharf RN Assistant Medical Director, under color of state law, to answer the Plaintiffs please to help after all the instances of vomiting blood, having [red blood] and black (dry) blood in colostomy bag, experiencing bouts of extreme and debilitating pain, acted with malice by refusing for over nine months to provide a proper diet to respond to these symptoms mentioned herein, or to order a special diet designed to prevent irreperable harm and/or exacerbate Plaintiffs Crohns Disease by damaging the terminal ileum, located in the small bowel, irreperable, to such a degree that the pain is constant through all activities, including eating, and must now be removed, inflicting physical, emotional,

9

mental pain, failing to investigate at all to make informed decisions about Crohns Disease and the different diets available as it pertains to what ailments Plaintiff has, for making poor medical judgement so bad that it falls below professional medical standards, thereby constituting Deliberate Indifference to a serious medical need of the Plaintiff, violating the clause under the Eighth Amendment of cruel and unusual punishment, including deprivation of federal right.

82. The refusal of Defendant Daniel Woydick MD, under color of state law, to answer the Plaintiffs pleas to help after all the instances of vomiting blood, having [red blood] and black (dry) blood in colostomy bag, experiencing bouts of extreme and debilitating pain, acted with malice by refusing for over 9 months to provide a proper diet to respond to these symptoms mentioned herein, or to order a special diet designed to prevent irreperable harm and/or exacerbate Plaintiffs Crohns Disease by damaging the terminal ileum, located in the small bowel, irreperably, to such a degree that the pain is constant through all activities, including eating, and must now be removed, inflicting physical, emotional, and mental pain, failing to investigate at all to make informed decisions about Crohns Disease and the different diets available as it pertains to what ailments patient (plaintiff) has, for making this poor medical judgement so bad that it falls below professional medical standards, thereby constituting Deliberate Indifference to a serious medical need of the Plaintiff, violating the clause under the Eighth Amendment of cruel and unusual punishment, a deprivation of federal right.

83. The refusal of Defendant Stephany Posha RN Special Needs Supervisor, under color of state law, did act with Deliberate Indifference when she ignored Plaintiffs various symptoms that kept coming up over the course of more than nine months, ignoring pleas to provide a proper diet to respond to these symptoms, or to order a special diet designed to prevent irreperable harm and/or exacerbate Plaintiffs Crohns Disease by damaging the terminal ileum, located in the small bowel, irreperably, to such a degree that the pain is constant through all activities, including eating, and must now be removed, inflicting physical, emotional, and mental pain, failing to investigate at all to make informed decisions about Crohns Disease and the different diets available as it pertains to what ailments patient has, for making this poor medical judgement so bad that it falls below professional medical standards, acting with malice and violating the clause under the Eighth Amendment of cruel and unusual punishment, a deprivation of federal right.

84. The refusal of Defendant Dean Chapel PA, under color of state law, to respond to Plaintiffs exceptionally serious symptoms regarding his Crohns Disease, over nine months, failing to provide and/or order a special diet that would've stopped said symptoms and prevented the irreperable harm now suffered, making it hurt to eat, as well as all other activities, inflicting physical, emotional, and mental pain, failing to investigate and acting with malice, and facts to make an informed decision, for making poor medical judgement so bad that it falls below professional medical standards,

thereby constituting Deliberate Indifference to a serious medical need of the Plaintiff, violating the clause under the Eighth Amendment of cruel and unusual punishment, a deprivation of federal right.

85. The refusal of Defendant Jodi Cozby NP, under color of state law, to respond to Plaintiffs exceptionally serious symptoms regarding his Crohns Disease, over nine months, failing to provide and/or order a special diet that would've stopped the said symptoms and prevented the irreperable harm now suffered, making it hurt to eat, as well as all other activities, inflicting physical, emotional, and mental pain, failing to investigate at all to make informed decisions, for making poor medical judgement so bad it falls below professional medical standards, thereby constituting Deliberate Indifference to a serious medical need of the Plaintiff, violating the clause under the Eighth Amendment of cruel and unusual punishment, a deprevation of federal right.

86. The refusal of Defendant Amanda Womack NP, under color of state law, to respond to Plaintiffs exceptionally serious symptoms regarding his Crohns Disease, over nine months, failing to provide and/or order a special diet that would've stopped said symptoms and prevented the irreperable harm now suffered, making it hurt to eat, as well as all other activities, inflicting physical, emotional, and mental pain, failing to investigate at all to make informed decisions, for making poor medical judgements so bad that it falls below professional medical standards, thereby constituting Deliberate Indifference to a serious medical need of the Plaintiff, violating the clause under the Eighth Amendment of cruel and unusual punishment, a deprivation of federal right.

87. Defendant Alisha Hanna RN made verbal threats with the intent to stop Plaintiff from making complaints to the infirmary regarding the ongoing complications from his Crohns Disease, creating a chilling effect that made the Plaintiff feel reluctant about making legitimate medical complaints regarding what ailed him, also going as far as cussing at Plaintiff, yelling, without provication and/or justification, taking Plaintiffs job, accusing Plaintiff of lying about bleeding while blood was dripping from his person, and refusing Plaintiff any treatment and/or medical supplies for his surgical injury upon complaint, finally failing to investigate at all to make an informed judgement, with malice, thereby constituting Deliberate Indifference to a serious medical need of the Plaintiff, violating the clause under the Eighth Amendment of cruel and unusual punishment, a deprivation of Federal Right.

Discrimination

88. Defendant Paul Rees PHY Medical Director, is familiar with Plaintiffs disability per Crohns Disease by his restrictions for eating, sleeping, walking, standing, lifting, sitting, bending, and working, while also being aware of the lack of operation by the digestive system and bowels (small and large bowel or upper and lower intestine) by the over active immune system of which creates the physical disabilities for which Plaintiff has been

recognized by the Social Security Administration of the United States of America as of 08/25/2023, and refusing to help with the complications arising per Plaintiffs Crohns Disease and the correlation of a proper diet, did in fact discriminate against the Plaintiff per the Federal ADA, Title II and 504 of the Rehabilitation Act of the Federal Government of the United States.

89. Defendants Ray Hunt RDRN, Melissa Scharf RN Assistant Medical D Director, and Stephany Posha RN Special Needs Supervisor, are all familiar with Plaintiffs disability per Crohns Disease by his restrictions for eating, sleeping, walking, standing, lifting, sitting, bending, and working, while also being aware of the lack of operation by the digestive system and bowels (small and large bowel, upper and lower intestines) by the over active immune system, of which Plaintiff has been recognized by the Social Security Administration of the United States of America as of 8/25/23, and refusing to help with the complications arising per Plaintiffs Crohns Disease and the correlation of a proper diet, did in fact discriminate against the Plaintiff per Federal ADA, Title II and section 504 of the Rehabilitation Act of the Federal Government of the United States.

## VII.   Relief Requested

### A.   Deliberate Indifference

90. Declare that Ray Hunt RD violated Plaintiffs Eighth Amendment Rights when he refused to provide a proper diet that would prevent irreperable harm for his Crohns Disease.

91. Declare that Defentant Paul Rees PHY Medical Director, violated Plaintiffs Eighth Amendment Rights when he refused to order a proper diet for Plaintiffs Crohns Disease, acting with malice as nine months of suffereble symptoms were endured, which led to irreperable harm, ending in a section of the small bowel having to be removed which constitutes irreperable harm.

92. Declare that Defendants Daniel Woydick MD, Dean Chapel PA, Jodi Cozby NP, Amanda Womack NP, Stephany Posha RN Special Needs Supervisor, and Melissa Scharf RN Assistant Medical Director, all violated Plaintiffs Eighth Amendment Rights when they refused to order a proper diet for Plaintiffs Crohns Disease, acting with malice as nine months of sufferable symptoms were endured, which led to irreperable harm, ending in a section of the small bowel having to be removed which constitutes irreperable harm.

### B.   Discrimination

93. Declare that Defendant Ray Hunt RDRN discriminated against the Plaintiff knowing the Plaintiff is physically disabled by Crohns Disease and its consequences, yet refused to provide a diet that wouldn't cause irreperable harm, thereby exacerbating Plaintiffs Crohns Disease to the point of having to permanently a section of intestines.

94. Declare that Defendants Paul Rees PHY Medical Director, Daniel Woydick MD, Melissa Scharf RN Assistant Medical Director, Stephany Posha RN Special Needs Supervisor, Dean Chapel NP, Jodi Cozby NP, Amanda Womack NP, all discriminated against Plaintiff by knowing about Plaintiffs

Crohns Disease and its disabling and devilitating consequences, yet still chose to have diet deferred to [and its issuance thereof] the dietician, regarding stopping irreperable harm, despite nine months plus of symptoms and complaints that the dietician refused to help with in any way.

C. a Damages

1. Award Compensatory Damages in the following amounts:

95. $22,000,000.00 jointly and severally against Defendants Ray Hunt, Paul Rees, Melissa Scharf, Daniel Woydick, and Stephany Posha for irreperable harm including the physical, mental, and emotional injuries suffered and sustained as a result of their actions and/or lack thereof.

96. $2,000,000.00 jointly and severally against Defendants Jodi Cozby, Dean Chapel, and Amanda Womack for the irreperable physical harm, and the physical, mental, and emotional injuries suffered and sustained as a result of their actions, and/or lack thereof.

2. Punitive Damages in the following amounts:

97. $200,000 against Ray Hunt, Paul Rees, Melissa Scharf, Daniel Woydick and Stephany Posha, Defendants.

98. $75,000.00 against Jodi Cozby, Dean Chapel, and Amanda Womack, Defendants.

D. Injunctive Relief

99. Issue an Injunction Relief demanding that Ray Hunt follow Diet as drawn out as seen in exhibit 1.

100. Order Paul Rees to order diet that is attached for Crohns Disease to prevent any further harm. irreperable or otherwise, immediately and without delay.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed this 04 day of February, 2025.

[signature]
Plaintiff Signature