IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| WINSTON A. RITTER, | CV-24-87-H-DLC |
| Plaintiff, | |
| vs. | ORDER |
| RAY HUNT, ET AL., | |
| Defendants. | |

Shortly after Plaintiff Winston Ritter filed his Complaint, he filed a motion for a preliminary injunction. (Doc. 5.) After various delays, the motion is now fully briefed and is denied.

I.   FACTUAL BACKGROUND

The following background is taken, for context only, from Ritter's Second Amended Complaint, which raises claims related to his medical care at Montana State Prison ("M.S.P."). (Doc. 14.) Ritter suffers from Crohn's disease. (Doc. 14 at 2.) When he arrived at M.S.P. on February 14, 2024, he notified the intake nurse of his condition and told her that he has managed his symptoms since 2005 with a particular diet. Shortly later, Ritter was suffering from severe abdominal pain, blood clots, and vomiting. He was sent to the emergency room and returned with instructions, including to change his prescription for prednisone. (Doc. 14 at 2.) He alleges that did not occur, and that he was denied his special diet. (Doc. 14 at 2.)

1

Over the next few months, Ritter attempted to get his low fiber diet; he was prescribed other diets and had other medical interventions. (Doc. 14 at 3 - 4.) Ritter alleges that his grievances related to his required diet and his ongoing symptoms were ignored. (Doc. 14 at 5 - 6.) Ritter had ongoing physical problems, and eventually, in July 2024, he was hospitalized for a bowel obstruction. (Doc. 14 at 7.) After further grievances, Ritter was granted a low fiber diet in November, 2024. (Doc. 14 at 8.)

Ritter's motion for a preliminary injunction seeks an order that Defendants Ray Hunt, Paul Rees, and Stephany Pasha, "ensure that he receives proper and necessary diet, to employ preventative care, and to stop worsening of already suffered irreparable harm." (Doc. 5 at 1.) Further, he seeks to enjoin Defendants Scharf and Hanna "from any decisions regarding" his medical care. (Doc. 5-1 and 2.) His Amended Complaint seeks an injunction "demanding that Ray Hunt follow [the] diet drawn out as seen in exhibit 1," and "order Paul Rees to order diet that is attached for Crohn's Disease." (Doc. 14 at 3.) (The exhibits do not appear to be attached to the SAC, but they are attached to his declaration in support of his preliminary injunction motion. (Doc. 5-2.))

  II.  ANALYSIS

**A. Legal Standard for Issuing Preliminary Injunction**

2

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original.) The party seeking an injunction must show that: 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in their favor; and 4) an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The first factor "is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). Thus, a "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

The Prison Litigation Reform Act ("PLRA") further constrains the Court's authority to enter an injunction.

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. *The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system*.

18 U.S.C. § 3626(a)(2) (emphasis added). But a court may not deny a preliminary injunction motion and thereby "allow constitutional violations to continue simply because a remedy would involve intrusion into" an agency's administration of state law. *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023) (internal citation omitted.)

3

Ritter's motion fails to meet the standard required for issuance of an injunction.

**1. Likelihood of Success on the Merits**

Ritter contends that "succeeding on the merits should prove to be easy as the harm caused is undeniable and verifiable." (Doc. 5 at 6.) The theory of his Eighth Amendment case is that, from the first day he arrived at M.S.P., he requested a specific diet, he did not get it for months, and he suffered serious medical problems as a result. The delay, he asserts, evinces deliberate indifference to his serious medical need.

Though he does not discuss Defendants Scharf and Hanna in this section of his brief, Ritter later discusses what he perceives to be their personal attempts to prevent him from receiving medical care, more in the form of a retaliation claim than a denial of care claim. (Doc. 5 at 6; 5-1 at 2.) He claims that they respond to his requests of assistance with impeding his care, threats, and aggressiveness. (Doc. 5 at 5.)

Defendants respond that Ritter will not succeed on his claims, because the evidence shows that M.S.P. staff worked diligently to address Ritter's issues. (Doc. 25 at 3.) Defendants attach the treatment notes of Defendant Hunt, M.S.P. dietician, which they claim show that Defendants have been working to resolve Ritter's issues. (Doc. 25-1.) They also contend the notes show that Ritter's

difficulties stem more from his refusal to follow the diet, rather than Defendants' failure to provide it. (Doc. 25 at 4.)

Ritter's reply brief disputes various factual assertions made by Defendants, including their interpretation of Defendant Hunt's notes. (Doc. 26.)

Lack of medical care in a prison context may give rise to an Eighth Amendment claim. To prevail, Ritter must show that a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs". *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986). The Ninth Circuit employs a two-prong test for deliberate indifference to medical needs. A plaintiff first must show "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). A plaintiff then must show "the defendant's response to the need was deliberately indifferent." *Id.*

This two-pronged test consists of an objective and subjective element. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). The first prong, serious medical need, is objectively shown by demonstrating that "failure to treat the injury . . . could result in further significant injury or cause the unnecessary and wanton infliction of pain." *Id*. (internal quotation marks omitted). The second

prong, deliberate indifference, involves a subjective assessment of whether a defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* (internal quotation marks omitted). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [] must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1970).

Ritter has sufficiently alleged for the purposes of this motion, or at least Defendants do not dispute, that he suffers from a serious medical need, given ongoing gastrointestinal problems for decades. But whether he is likely to prevail on the merits given the other elements of the claim is a much more open question.

As to the provision of medical care, "[c]ertain principles follow necessarily from the deliberate indifference standard and facilitate its application to" specific cases, *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014), such as a case involving choices between alternative courses of treatment, where a "plaintiff must show that the [chosen] course of treatment . . . was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051, 1068 (9th Cir. 2004).

The evidence on the motion includes the Hunt records of Ritter's treatment, and Ritter's sworn declaration. (Docs. 5-1, 25-1 and 25-2.) Defendant Hunt's progress notes reveal the following interesting points. First, though not relevant to the conduct in this lawsuit, Hunt's notes regarding Ritter's diet and requests for accommodations go back to 2017, when Ritter was previously at M.S.P. Thus, there is historical context for the saga of Ritter's dietary needs and the institutional responses, particularly Defendant Hunt's.

Second, as Hunt points out in correspondence with Ritter, Hunt is not a medical provider and can only respond to the instructions given him by medical staff. (Doc. 25-1 at 7.) What is clear from the dozens of entries on the matter is that management of Ritter's diet at M.S.P. has resembled a bit of the old telephone game—medical or special needs panel orders for him get translated by Hunt and then produced by Food Services and consumed by Ritter, only for Ritter to file grievances about it that go through another route to various other managers and back around again. (Doc. 25-1 at 5.) The evidence does not show deliberate indifference on the part of Hunt. He appears willing to do what medical providers tell him to, and, within reason, what Ritter asks, without any indifference to Ritter's needs.

There was a long period in early to mid-2024 in which he was on a low carb/high protein diet, which is not the low fiber diet that Ritter claims to need or

what he allegedly sought all along. That caused him to take some items from other people's trays or the regular food line in order to get enough to eat, but then that was considered non-compliance with the diet and caused the diet to be discontinued. On August 6, 2024, Defendant Hunt advised the medical staff that the special diet Ritter was receiving may not be the proper diet for him, and that "it may be important to reevaluate his medical diet order." (Doc. 25-1 at 4.) Ritter's weight loss was noted at this time, but Hunt identified his new weight as appropriate for his height. Defendant Scharf responded that the diet would be reviewed with providers. Ultimately, Ritter's low carb/high protein diet was cancelled by Defendant Scharf, on the theory that Ritter could pick and choose low fiber items from the regular menu that would work for his condition. (Doc. 25-1 at 3.) Hunt's notes show no communications between him and Ritter from the time the special diet was discontinued until late October, 2024, during which time, presumably, Ritter was eating selectively from the regular menu. He then grieved his diet regarding beans and corn, which are not low fiber foods. (Doc. 25-1 at 2.) Ritter was issued a new low fiber diet on November 13, 2024.

 Ritter has not shown he is likely to succeed on the merits of his Eighth Amendment claim. At this point, he has provided insufficient evidence to show that "the [chosen] course of treatment . . . was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of

an excessive risk to plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051, 1068 (9th Cir. 2004). The record before the Court shows that M.S.P. officials were in somewhat constant dialogue with him about what he could and could not eat, what they could and could not provide within the prison context, and what his medical providers required, after more than one visit to outside providers. Ritter did not receive exactly what he requested in terms of diet for several months, and may, in fact, still not be receiving exactly what he requested. But Hunt's notes establish that staff were attempting to accommodate him by various methods and were not deliberately indifferent to his needs.

### 2. Likelihood of Irreparable Harm

Ritter's brief focuses mainly on irreparable harm, but his strongest assertions are historical—that irreparable harm has already occurred. (Doc. 5 at 4.) Ritter states that the required diet "still has not been implemented," but that statement appears contradicted by the record. Later in the brief, Ritter acknowledges that a low fiber diet "has been implemented and is very close to what exactly is needed," he also says it is "not complete and doesn't go far enough." (Doc. 5 at 4.)

In response, Defendants assert that they are, in effect, already providing Ritter with the relief he seeks, a low fiber diet. (Doc. 25 at 5.) As a result, his health is improving. As such, injunctive relief is not necessary to prevent irreparable harm.

Ritter's reply brief confuses the issue. He asserts again what he has stated previously, which is that irreparable harm has already occurred. (Doc. 26 at 2.) He also states that he has a medically-ordered low fiber diet, which is what was implemented on November 13, 2024, as stated above. But then he says he recently had another emergency surgery, and "these instances still haven't gone far enough. Injunctive Relief would fill in the gaps. Plaintiff wishes to make it very clear that the current diet he is on was no[t] designed by MSP but rather the plaintiff himself." (Doc. 26 at 3.)

This final statement shows that Ritter is prepared accept only his suggested diet, as included in an exhibit to his original motion, without deviation. (Doc. 5-2 at 1.) That diet, however, is vague in some respects and appears generally consistent with the diet he is receiving, which is appended to Defendants' brief. (Doc. 25-1 at 19 – 22.) (Bacon, sausage, and bologna on the M.S.P. diet are likely processed meats, which Ritter says to avoid. But there are other meats available. Jello is on the MSP menu and could potentially include red dye 29, another ingredient to be avoided. Ritter's menu confusingly says no vegetables or fruits with "some exceptions," so the various unspecified "low fiber vegetables" on M.S.P.'s menu cannot be assessed.) In the end, Ritter has not clarified or specified how the diet he seeks is not consistent with or almost identical to the diet provided by MSP.

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Ritter may have suffered irreparable damage during the time he was not receiving a low fiber diet, but that form of "irreparable" is retrospective; it can only be compensated with money damages. Ritter has not established that not providing him with the diet he suggests, as opposed to the one M.S.P. is using, will cause him further irreparable damage that is not already a consequence of his chronic illness(es).

As to the other part of the injunction he requests, to prevent certain staff from involvement in his case, that is construed more as a First Amendment retaliation claim, which he has not pled in his Second Amended Complaint. If it is related to his Eighth Amendment medical care claim, then the injunctive relief again serves no purpose, if he is receiving the low fiber diet that he needs. In addition, Ritter again here seeks a mandatory injunction, i.e., a change in the status quo preventing his current medical providers from being involved in his care. Unless or until he has proven any claim against them, the Court cannot conclude that the status quo related to their involvement is causing or will cause Ritter irreparable harm.

11

### 3. The Balance of Equities/Public Interest

"Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940 (9th Cir. 2020). In this case, the balance of the equities and the public interest weigh against an injunction.

Ritter contends that implementing his diet would not be burdensome. (Doc. 5 at 6.) He emphasizes what he sees as harassment of him by Defendants, and seeks the injunction against Defendants Scharf and Hanna to avoid those behaviors. (Doc. 5 at 5 – 6.) In his reply, however, he states that "the restraining order asked for by the Plaintiff would have nothing to do with meals in any way and would only affect two medical employees that are virtually away from the Plaintiff any way." (Doc. 26 at 3.)

Defendants emphasize the need to be flexible in the prison context, since available foods may change, and staff need to be able to respond accordingly. (Doc. 25 at 6.) More broadly, they emphasize the need for the court to defer to the experience of prison officials.

Given that the other factors weigh against issuance of an injunction, the deference owed to the administrative expertise of prison staff ends the analysis. If Ritter's constitutional rights were being violated, which on the current record does not appear to be true, then any asserted prison expertise would ring hollow.

However, given that Ritter is receiving the diet and medical care he needs, the additional administrative burden of imposing further restrictions or orders on Defendants by mandatory injunction is unnecessary. The public interest would not be served by issuing such an injunction.

    Accordingly, it is HEREBY ORDERED:

    1. Plaintiff's motion for a preliminary injunction (Doc. 5) is DENIED.

    2. Ritter must immediately advise the Court and opposing counsel of any change of address. Failure to do so may result in dismissal. Fed. R. Civ. P. 41.

    DATED this 17th day of June, 2025.

*Dana L. Christensen*

Dana L. Christensen, District Judge
United States District Court